UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ARMANDO S.-Q.,

                Plaintiff,

      -v-                                                  21-CV-6741Sr

COMMISSONER OF SOCIAL SECURITY,

                Defendant.

_____

## DECISION AND ORDER

        As set forth in the Standing Order of this Court regarding Social Security Cases subject to the May 21, 2018, Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #12.

## BACKGROUND

        Plaintiff applied for disability insurance and supplemental security income benefits with the Social Security Administration ("SSA") on January 24, 2017, at the age of 35, alleging disability beginning on January 8, 2017, due to sleep apnea, lumbar disc disease, chronic obstructive pulmonary disease ("COPD"), asthma, morbid obesity, depressive disorder, and anxiety disorder. Dkt. #7-2, p.22.

1

On August 5, 2019, plaintiff appeared with counsel and an interpreter, along with vocational expert ("VE"), Peter Manzi, before Administrative Law Judge ("ALJ"), John P. Costello. Dkt. #7-2, pp.72-100. Plaintiff testified that he was currently working full-time cleaning offices but experienced back pain that causes his legs to fall asleep and requires him to take a lot of breaks. Dkt. #7-2, pp.80 & 86-87. He explained that he can sit for approximately 4-5 minutes before he needs to stretch his legs and that he can stand or walk no more than 15 minutes before needing a break. Dkt. #7-2, p.87. Plaintiff attempted physical therapy, but it caused more pain. Dkt. #7-2, p.88. He experiences shortness of breath when he walks a long distance and uses a rescue inhaler twice a day. Dkt. #7-2, p.88. Plaintiff uses a CPAP for sleep apnea, but often takes it off while he is sleeping. Dkt. #7-2, p.89. He frequently falls asleep during the day. Dkt. #7-2, p.90. He was prescribed medication for depression, which he takes when he feels depressed. Dkt. #7-2, p.92. He explained that he was feeling down because he couldn't provide for his family and was even experiencing suicidal thoughts. Dkt. #7-2, p.93. He was sitting around the house, not doing much, and falling asleep wherever he was sitting. Dkt. #7-2, p.93.

ALJ Costello rendered a decision that plaintiff was not disabled on September 20, 2019. Dkt. #7-3, pp.28-47.  On July 24, 2020, the Appeals Council concluded that the ALJ improperly excluded certain medical evidence received prior to the date of the decision (Dkt. #8, pp.581-642), and remanded for consideration of such evidence.  Dkt. #7-3, p.53.

On March 8, 2021, plaintiff appeared with counsel and an interpreter, along with VE Zachary Fosberg, and testified at an administrative hearing by telephone before ALJ John Costello. Dkt. #7-2, pp.45-70. Plaintiff amended his application to request disability benefits during a closed period from January 8, 2017 through July 1, 2019, which is when plaintiff returned to work following his recuperation from bariatric surgery. Dkt. #7-2, pp.52-53 & 57. During this period of time, plaintiff reiterated that he couldn't stand or sit for too long due to the pain in his back and that he could fall asleep anywhere. Dkt. #7-2, p.60. He testified that sitting was particularly difficult because the sciatica pain would work its way down his legs. Dkt. #7-2, p.62. He could barely walk five minutes before becoming out of breath and fell a couple of times because his legs would go numb. Dkt. #7-2, pp.61-62. If he went shopping with his wife, he would have to use an electric cart. Dkt. #7-2, p.64. He became depressed because he was always in pain or asleep and couldn't do anything. Dkt. #7-2, p.62.

When asked to assume an individual with plaintiff's age, education and work experience who was limited to sedentary work requiring no more than simple, routine tasks and no exposure to respiratory irritants, the VE testified that such an individual could work as a telephone order clerk or inspector, both of which were unskilled, sedentary positions. Dkt. #7-2, pp.68-69.

On May 5, 2021, the ALJ rendered a decision that plaintiff was not disabled during the closed period of January 8, 2017, through July 1, 2019. Dkt. #7-2, pp.20-39. The Appeals Council denied review on November 4, 2021. Dkt. #7-2, p.2.

Plaintiff commenced this action seeking review of the Commissioner's final decision on December 15, 2021. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is

4

not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff engaged in substantial gainful activity as of July, 2019 but there was a continuous period from January 8, 2017 through July 1, 2019 in which plaintiff did not engage in substantial gainful activity; (2) plaintiff's sleep apnea, lumbar disc disease, COPD, asthma, morbid obesity, depressive disorder, and anxiety disorder constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform sedentary work[1] except

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in

5

that he can only be subjected to occasional exposure to respiratory irritants, extremes in temperatures and humidity, and is limited to performing simple, routine tasks; and (5) plaintiff was unable to perform his past relevant work but was capable of working as an order clerk and inspector, each of which were sedentary, unskilled positions and was not, therefore, disabled within the meaning of the SSA. Dkt. #7-2, pp.23-38.

Plaintiff argues that the ALJ did not properly evaluate opinions from treating physicians Dr. Lin and Dr. Jolin. Dkt. #9-1, pp.14-23. Specifically, plaintiff argues that it was error to find Dr. Lin's opinion was entitled to "good weight" and then fail to reconcile it to his RFC. Dkt. #9-1, p.20. More specifically, plaintiff argues that the ALJ provided no evidence that contradicted the sitting limitations provided by Dr. Lin and Dr. Jolin. Dkt. #9-1, pp.21-22.  Plaintiff also contends that the ALJ relied upon his lay opinion in devising the mental RFC rather than relying upon the psychological opinions in the record. Dkt. #9-1, pp.23-28. Specifically, although the ALJ claimed to rely upon the findings of Dr. Deneen and Dr. Marks, the ALJ determined that the record supported greater mental limitations than found by these doctors and implemented a mental RFC limitation to simple, routine work without any explanation as to how he determined such limitation. Dkt. #9-1, pp.27-28.

---

carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 416.967(a). Occasionally generally corresponds to no more than 2 hours in an eight-hour work day, suggesting a total of about 6 hours in an eight-hour work day would be sitting. SSR 96-9P, 1996 WL 374185, at *3.

The Commissioner responds that the ALJ properly evaluated the medical evidence, including the treating source opinions, and provided sufficient explanation for his determination that plaintiff was capable of sedentary work during the relevant time period. Dkt. #10-1, pp.18-27. The Commissioner points out that Dr. Dave, Dr. Seok, and Dr. Wu all opined that plaintiff was capable of sedentary work and the sitting limitations referenced by Dr. Lin and Dr. Jolin were inconsistent with other evidence in the record. Dkt. #10-1, pp.20-24 & 26. The Commissioner argues that the ALJ properly discounted Dr. Jolin's assessment given the fact that plaintiff had returned to work and Dr. Lin had opined that plaintiff had very minimal functional limitations two months prior to Dr. Jolin's opinion. Dkt. #10-1, p.24. Finally, the Commissioner asserts that it was not error for the ALJ to impose a more restrictive mental RFC than suggested by Dr. Deneen and Dr. Marks. Dkt. #10-1, pp.27-30.

For claims filed before March 27, 2017, the SSA regulations provide that, unless the ALJ affords controlling weight to a treating source's medical opinion, the ALJ is required to consider and weigh all medical opinions of record, whether those opinions are from acceptable medical sources, other medical sources, or non-medical sources, with consideration of the following factors for determining the appropriate weight to afford such opinions: (1) the frequency of examination; (2) the length, nature and extent of the treatment relationship; (3) the evidence in support of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) other factors brought to the SSA's attention that tend to support or contradict the opinion. *Saxon v. Astrue*, 781 F. Supp.2d 92, 103-04 (N.D.N.Y. 2011); *see*

20 C.F.R. § 404.1527(f)(2). So long as the ALJ's rationale is clear, however, the ALJ need not address each factor individually. *See Atwater v. Astrue*, 512 Fed. App'x 67, 70 (2d Cir. 2013).

Genuine conflicts in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in a decision, the ALJ is entitled to weigh all of the evidence available to make a residual functional capacity finding ("RFC"), that is consistent with the record as a whole. *Trepanier v. Comm'r of Soc. Sec.*, 752 Fed. App'x 75, 79 (2d Cir. 2018); *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). An ALJ need not reconcile every conflict in the record, but must set forth the crucial factors in his determination with sufficient specificity to enable a reviewing court to decide whether the determination is supported by substantial evidence. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). A plaintiff is entitled to understand why the ALJ chose to disregard portions of medical opinions that were beneficial to his application for benefits. *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp.2d 288, 297 (W.D.N.Y. 2006). Thus, when an ALJ chooses to adopt only portions of a medical opinion, the ALJ must explain his decision to reject the remaining portions. *Tanya Y. v. Comm'r of Soc. Sec.*, 20-CV-712, 2022 WL 1115458, at *2 (W.D.N.Y. Apr. 14, 2022). Conclusory assertions of inconsistency with the medical record are insufficient. *Hodgkin v. Comm'r of Soc. Sec.*, 612 F.Supp.3d 173, 181 (W.D.N.Y. 2020).

In the instant case, the ALJ provided sufficient explanation for his assessment of the various medical opinions within the record and his determination that

plaintiff was capable of performing sedentary work with additional limitations is supported by substantial evidence. As relevant to plaintiff's ability to sit, the ALJ noted that an MRI revealed a small left foraminal disc protrusion at L5-S1 which partially effaces the exiting left L5 nerve, resulting in mild left neural foraminal narrowing. Dkt. #7-2, p.29 & Dkt. #8, p.225. The ALJ also noted variable observations regarding plaintiff's spinal range of motion, with numerous examinations between January 2, 2017 and December 27, 2018, documenting normal musculoskeletal range of motion. Dkt. #7-2, p.30 & Dkt. #8, pp.36, 105, 194, 200, 209, 294, 329, 334, 338, 348, 352, 358, 363, 370 378, 384, 388, 396, 400, 404, 412, 416 & 435-436. The ALJ further noted that plaintiff reported a reduction of pain to 3/10 at the conclusion of six physical therapy sessions on November 9, 2017, but declined additional physical therapy and when he subsequently returned to physical therapy on August 31, 2018, was discharged for lack of attendance after 4 sessions. Dkt. #7-2, pp.29 & 34 & Dkt. #8, pp.160, 163 & 172. The ALJ also noted that plaintiff's function report did not indicate limitations with respect to sitting. Dkt. #7-2, p.34 &  Dkt. #7-6, p.60. Overall, the ALJ determined that

> the record generally indicates that [plaintiff] had low back and intermittent knee pain likely primarily due to his weight since imaging of his spine and left knee showed minimal or no findings and treatment notes suggest that his pain improved following bariatric surgery. He also declined physical therapy that was helping him, which tends to suggest that his symptoms were not as acute as alleged, and treatment notes document predominantly mild findings upon examination.

Dkt. #7-2, p.34.

With respect to the opinion evidence, the ALJ evaluated opinions from treating providers Terri Ragin, RPA-C, Joanne Wu, M.D., Jonathan Lin, M.D., and Cassandra Jolin, M.D., as well as independent consulting physician, Nikita Dave, M.D., and state agency physician, I. Seok, M.D. Dkt. #7-2, pp.35-36. On May 18, 2017, Dr. Dave observed that plaintiff appeared to be morbidly obese, but with unremarkable gait and stance. Dkt. #8, p.66. Plaintiff was able to rise from a chair without difficulty and did not require assistance to get on and off the exam table. Dkt. #8, p.66. He was able to walk on his toes and squat one-half down but declined heel gait due to knee pain. Dkt. #8, p.66. Dr. Dave observed full flexion, extension and rotary movement of plaintiff's cervical spine; full forward flexion and extension to 10 degrees of the lumbar spine; lateral flexion to 15 degrees and rotation to 20 degrees bilaterally of the lumbar spine; negative straight leg raise bilaterally; and full range of motion of shoulders, elbows, forearms, wrists, hips, knees and ankles bilaterally. Dkt. #8, pp.66-67. Dr. Dave recommended that plaintiff avoid smoke, dust, fumes, inhalants, chemicals, temperature extremes, humidity and severe physical exertion due to COPD and noted that plaintiff "would benefit from more sedentary types of activity," but imposed "[n]o other limitations." Dkt. #8, p.67. The ALJ found Dr. Dave's opinion entitled to "good weight" as it pertained to environmental limitations but determined that additional exertional limitations were warranted to address plaintiff's musculoskeletal impairments, obesity and sleep apnea. Dkt. #7-2, p.36.

On June 16, 2017, state agency review physician, Dr. Seok reviewed plaintiff's reported activities of daily living and medical records, including the results of

10

the consultative examination, and determined that plaintiff was capable of occasionally lifting and carrying up to ten pounds and could sit for about 6 hours and stand or walk for a total of 2 hours in an eight-hour day with normal breaks. Dkt. #7-3, p.11. Dr. Seok also recommended environmental limitations to address plaintiff's history of COPD. Dkt. #7-3, p.12.  The ALJ afforded this opinion "good weight" because it was supported by treatment notes documenting morbid obesity and musculoskeletal pain and some limitations in range of motion, as well as imaging showing minimal findings. Dkt. #7-2, p.36.

The ALJ also acknowledged Physical Assessments for Determination of Employability for the Monroe County Department of Human Services ("DHS Employment Assessments"), completed by PA Ragin on August 14, 2017 and May 30, 2018, which opined that during an eight-hour work day, plaintiff could walk 1-2 hours; stand 1-2 hours; and sit 2-4 hours due to, *inter alia*, low back pain, knee pain and morbid obesity. Dkt. #8, pp.582-585 &589-593. The ALJ afforded PA Ragin's opinion some weight based on her treating relationship with plaintiff but noted that the degree of limitation was not entirely supported by the treatment notes and imaging that documented minimal findings. Dkt. #7-2, p.35. Treatment notes from April 30, 2018, for example, reveal spinal tenderness but normal gait, negative straight leg raise bilaterally and no muscle spasm. Dkt. #8, p.194.

Although Dr. Wu observed 50% of expected lumbar spine range of motion on September 29, 2017 and November 8, 2017, she recommended no work restrictions

11

in her treatment notes dated September 29, 2017 and a "max 25 lbs limit bending/twisting limitation" on November 8, 2017. Dkt. #8, pp.228-229, 250-251. On August 1, 2018, Dr. Wu observed full range of motion of the lumbar spine, with tenderness, and reiterated a "max 25 lbs limit bending/twisting limitation." Dkt. #8, pp.272-273. The ALJ afforded Dr. Wu's opinion some weight, but noted that it was vague as to exertional limitations. Dkt. #7-2, p.36.

On September 5, 2018, Dr. Lin completed a DHS Employment Assessment opining that during an eight-hour work day, plaintiff could walk 1-2 hours; stand 1-2 hours; and sit 2-4 hours with short breaks every hour to change positions due to his chronic low back pain and obstructive sleep apnea.[2] Dkt. #8, pp.595-598. On January 3, 2019 and February 21, 2019, Dr. Lin completed DHS Employment Assessments opining that during an eight-hour work day, plaintiff could walk 1-2 hours; stand 1-2 hours; and sit 2-4 hours due to his chronic low back pain. Dkt. #8, pp.601-604 & 616-619. On June 7, 2019, Dr. Lin issued a fourth DHS Employment Assessment opining that, *inter alia*, plaintiff had no limitation walking, standing or sitting and could frequently stoop, kneel, crouch, crawl, lift and carry between 20-30 pounds, and work up to 40 hours since his low back pain was in remission after he lost 80 pounds following bariatric surgery on March 21, 2019. Dkt. #8, pp.625-628 & 654. The ALJ gave Dr. Lin's

---

[2] Plaintiff underwent a sleep study on October 11, 2017 which revealed very severe obstructive sleep apnea and highly significant oxygen desaturations. Dkt. #8, p.284. On October 3, 2018, compliance data from plaintiff's CPAP revealed that plaintiff was not using his CPAP machine. Dkt. #8, p.284.

opinions good weight since they reflected his treatment relationship with plaintiff, were consistent with imaging and hospital records, and reflected plaintiff's improvement over time, but found that the medical evidence in the record did not support limiting plaintiff to sitting for only 4 hours, which was contrary to plaintiff's own function report. Dkt. #7-2, p.35.

On August 30, 2019, Dr. Jolin completed a Treating Medical Source Statement indicating that plaintiff was unable to stand for long periods of time and unable to walk more than 1-2 blocks without shortness of breath and pain with exertion due to his chronic back and knee pain. Dkt. #8, p.637. Dr. Jolin opined that plaintiff could sit for no more than 30 minutes at a time and less than 2 hours in an eight-hour work day and could stand for 15 minutes at a time and stand/walk less than 2 hours in an eight-hour work day. Dkt. #8, p.640. Dr. Jolin opined that plaintiff would need a break every 30 minutes to an hour. Dkt. #8, p.640. On January 31, 2020, Dr. Jolin completed a DHS Employment Assessment opining that during an eight-hour work day, plaintiff could walk 1-2 hours; stand 1-2 hours; and sit 2-4 hours due to his history of low back pain. Dkt. #8-1, pp.94-97. Plaintiff's counsel subsequently inquired of Dr. Jolin whether these limitations applied between January 8, 2017 and July 1, 2019. Dkt. #8-1, p.112-113. Dr. Jolin responded that plaintiff was not her patient before August of 2019, but still had issues with back pain when she began treating him. Dkt. #8-1, p.112. The ALJ gave some weight to Dr. Jolin's findings but countered that Dr. Jolin's treatment notes documented only mild findings upon examination; plaintiff's MRI results revealed only

13

minimal findings; and plaintiff's own function report did not support Dr. Jolin's sitting limitation. Dkt. #7-2, pp. 33-34.

Having accurately summarized the medical treatment notes and opinions of record, it was not error for the ALJ to discount those opinions recommending a sitting restriction and rely instead upon the lack of support for such a limitation within the record, including the absence of such a restriction from other medical source opinions. *See Ramsey v. Comm'r of Soc. Sec.*, 830 Fed. App'x 37, 39 (2d Cir. 2020) (no error where ALJ accurately summarized medical notes and opinions and cited contradictory examination notes and other medical opinions in support of his RFC determination); *Martinez v. Kijakazi*, 2023 WL 8461356, at *9 (W.D.N.Y. Dec. 4, 2023) (remand not warranted where ALJ provided good reasons for rejecting limitations beyond the RFC, including inconsistency with the record).

With respect to plaintiff's mental RFC, the ALJ reviewed a consultative psychiatric evaluation conducted by Todd Deneen, Psy.D. on May 18, 2017. Dkt. #8, pp.89-94. Plaintiff reported that he lacks motivation to do things, but is able to dress, bathe and go shopping on his own. Dkt. #8, p.92. He did not drive due to fear of falling asleep. Dkt. #8, p.92. He reported that he spends his day trying to walk, but mostly sleeping. Dkt. #8, p.92. He was unable to perform serial 7s from 100 or serial 3s past 17. Dkt. #8, p.92. Dr. Deneen determined that plaintiff's attention and concentration were mildly impaired due to anxiety and possibly questionable effort. Dkt. #8, p.91. Plaintiff's recent and remote memory skills were also impaired due to questionable

14

effort, but also potentially due to the language barrier. Dkt. #8, p.92. Dr. Deneen noted that the results of the mental status evaluation were not consistent with plaintiff's vocational history. Dkt. #8, p.92. Dr. Deneen assessed plaintiff with no limitation in his ability to understand, remember and apply simple directions and instructions; no limitation in his ability to use reason and judgment to make work-related decisions; no limitation in his ability to interact adequately with supervisors, coworkers and the public; no limitation in his ability to sustain an ordinary routine and regular attendance at work; mild limitation in his ability to sustain concentration and perform a task at a consistent pace; mild limitation in his ability to regulate emotions, control behavior and maintain well being; and mild limitation in his ability to maintain personal hygiene and appropriate attire. Dkt. #8, p.93. Dr. Deneen opined that these limitations were caused by fatigue, lack of motivation, depression and anxiety. Dkt. #8, p.93. The ALJ gave some weight to this assessment based upon Dr. Deenen's personal examination of plaintiff but determined that treatment notes and plaintiff's testimony suggested that his ability to concentrate and manage stress "are limited to a greater degree." Dkt. #7-2, pp.35-36.

Upon state agency review, M. Marks, Ph.D., opined that plaintiff had mild limitations for the ability to understand, remember, or apply information, concentrate, persist, or maintain pace, and adapt or manage himself, but had no limitation in interacting with others. Dkt. #7-3, pp.106-07. The ALJ gave Dr. Marks' opinion some weight based upon review of the longitudinal record but found that plaintiff's reports and treatment notes support a greater degree of limitation in concentrating, persisting, or maintaining pace, and adapting or managing oneself. Dkt. #7-2, p. 35.

On April 19, 2018, plaintiff was admitted to the Catholic Family Center for symptoms consistent with major depressive disorder. Dkt. #8, pp.457-580 & 644-647. Plaintiff was discharged from the program after having failed to pick up his medication since August of 2018 and failing to attend therapy since September of 2018. Dkt. #8, p.644.

The ALJ determined that plaintiff had a mild limitation in his ability to understand, remember and apply information; mild limitation in his ability to interact with others; moderate limitation in his ability to concentrate, persist and maintain pace; and mild limitation in his ability to manage himself. Dkt.#7-2, p.27. Overall, the ALJ noted that mental status examinations did not reveal acute symptoms or significant limitations. Dkt. #7-2, p.34. Moreover, the ALJ noted that plaintiff's reported activities of daily living suggested that he was functioning well on a day-to-day basis. Dkt. #7-2, p.34. The ALJ determined that plaintiff's mental limitations were consistent with a limitation to simple work. Dkt. #7-2, p.37.

An ALJ's imposition of more restrictive limitations than those contained in the medical opinions of record is generally not a basis for remand. *Riederer v. Comm'r of Soc. Sec.*, 464 F. Supp.3d 499, 507 (W.D.N.Y. 2020). It is within the ALJ's discretion to credit plaintiff's testimony in assessing non-exertional limitations despite the lack of support for such limitations in the medical evidence of record. *Deborah Elaine L. v. Comm'r of Soc. Sec.*, 20-CV-6607, 2022 WL 26627974, at *4 (W.D.N.Y. July 11, 2022). Moreover, a restriction to unskilled work is sufficient to account for moderate limitations

in concentration, persistence, and pace. *Rachel D. v. Comm'r of Soc. Sec.*, 573 F. Supp.3d 892, 901 (W.D.N.Y. 2021).

## **CONCLUSION**

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #9), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #10), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:    Buffalo, New York**
**March 28, 2024**

                                                **s/ H. Kenneth Schroeder, Jr.**
                                                **H. KENNETH SCHROEDER, JR.**
                                                **United States Magistrate Judge**